IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ROBERT R. BRADLEY,

    Plaintiff,

v.  No. 1:09-cv-1153

BATES ACQUISITION, LLC,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

    Before the Court is Defendant, Bates Acquisition, LLC's ("Bates"), motion for partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") 14.) The Plaintiff, Robert Bradley, has responded to the motion (D.E. 16), and it is now appropriate for disposition. For the reasons set forth herein, the Court **GRANTS** the motion.[1]

FACTUAL BACKGROUND

    The Plaintiff is a married, male resident of Lewis County, Tennessee. (D.E. 1, Complaint, ¶ 6.) The Defendant is a Michigan limited liability company with a factory located in Perry County, Tennessee. (Id. at ¶ 2.) Bradley began working for Bates on June 28, 2004. (Id. at ¶ 6.) He contends that "the atmosphere in Defendant's workplace was permeated with sexual conduct, sexual comments and sexual overtones which offended Plaintiff and created a hostile work

---

[1] In its memorandum of law, the Defendant repeatedly cites certain authorities with the following insufficient notation: "Id. at ____." without any page or section numbers. (D.E. 14-1, MSJ, pp. 8-11.) Moreover, in one instance, the brief contains a "supra" without any further identification of the location of the referenced material. (Id. at p. 13.) Defendant's counsel is admonished that all citations to authority must contain specific page numbers, section numbers, or other indicia that permit the Court, opposing parties, and any other reader to locate the referenced passages. Merely citing a case itself—and thus forcing readers to expend time searching for the cited material—is vexatious and falls below the standards of briefing that the Court expects from attorneys admitted to practice before it. In the future, the Court will take a dim view of such filings, and will strike them from the docket.

environment." (Id. at ¶ 7.) Specifically, Bradley avers that beginning in 2006, he witnessed several of his male co-workers engaging in consensual same-sex sexual behavior, including stroking one another's penises and nipples, kissing, dancing, and humping each other. (D.E. 15-1, Bradley's Response to Bates's Statement of Undisputed Facts, ¶ 5.) The "ringleader" of this conduct was Scott Cude, who eventually became Plaintiff's supervisor. (Id. at ¶ 6.) Jason Gray, Rex Peeler, Doug Barber, and Patrick _____[2] participated in the sexual behavior as well (hereinafter "Cude et al."). (Id. at ¶ 9.) The employees' offensive conduct frequently was intended to be "a show," which they did to "entertain anyone around." (Id. at ¶¶ 15, 22.) Consequently, both male and female employees "were in a position to witness the harassing behavior" of which Plaintiff complains, because it occurred "all over the plant in front of the entire factory." (Id. at ¶¶ 11-12, 22.) However, on one occasion, Plaintiff felt that the acts were directed at him specifically. (Id. at ¶ 28.)

Bradley never participated in any of this conduct, "and his supervisor and [fellow] employees were aware that he considered such conduct unwelcome." (D.E. 1, Complaint, ¶ 7.) Plaintiff was never physically touched by any of the employees about whom he complains. (D.E. 15-1, Bradley's Response to Bates's Statement of Undisputed Facts, ¶ 13.) Because the frequency and severity of the conduct increased, Bradley complained to his supervisors about it in June of 2008, after which he was "remov[ed] from his job assignment and plac[ed] in an area of the plant where a female employee was known to slow down production, which caused Plaintiff to make less money." (D.E. 1, Complaint, ¶ 8.) Plaintiff contends that he subsequently complained to his Production Supervisor, and that he again was reassigned and given a lower hourly wage. (Id. at ¶ 9.) He then alerted the Human Resources Manager about the sexual activity, who informed him that there was nothing the company could do. (Id. at ¶ 11.) He avers

---

[2] From the parties' filings, it is apparent that neither knows Patrick's last name.

that his supervisors yelled at him, singled him out, gave him defective materials with which to work, and generally made it difficult for him to meet his production goals. (Id. at ¶ 12.) Bates suspended the Plaintiff from work for two days, and ultimately terminated his employment on August 19, 2008. (Id. at ¶ 13.)

As a result, Plaintiff filed charges with the Tennessee Human Rights Commission on October 20, 2008, which administratively closed his case on April 16, 2009. (Id. at ¶ 4.) The Equal Employment Opportunity Commission sent him a Notice of Right to Sue on April 28, 2009. (Id.) This lawsuit followed on July 14, 2009, in which Bradley seeks damages for sex discrimination, disparate treatment, sexual harassment, hostile work environment, and retaliation. In the Defendant's instant motion, it seeks summary judgment only as to Plaintiff's hostile work environment claim.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that

> judgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)(2); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). When the motion is supported by documentary proof, such as depositions and affidavits, the nonmoving party may not rest on the pleadings, but rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; *see also* Abeita v. TransAmerica Mailings,

Inc., 159 F.3d 246, 250 (6th Cir.1998). It is insufficient for the nonmoving party "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In the Sixth Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [an] asserted cause[] of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

Plaintiff brings his hostile work environment claim pursuant to the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[3] To survive a motion for summary judgment in a Title VII hostile work environment suit, a plaintiff must establish that (1) he is a member of a protected class; (2) he was subjected to harassment, either through words or actions, based on sex;[4] (3) the

---

[3] It is well settled in Tennessee law that the THRA is to be interpreted coextensively with Title VII, predicated upon a desire to maintain continuity between state and federal law. Leu v. Embraer Aircraft Maint. Servs., Inc., No. 3:10-0322, 2010 WL 1753616, at *2 n.2. (M.D. Tenn. April 30, 2010); Allen v. McPhee, 240 S.W.3d 803, 812 (Tenn. 2007). Thus, as both parties acknowledge, the Court's analysis of the Plaintiff's hostile work environment claims under the THRA and Title VII is the same.

[4] Defendant asserts that the "based on sex" portion of the inquiry requires a plaintiff to demonstrate that "but for [his] gender," he would not have been harassed. (D.E. 14-1, MSJ, pp. 2, 8.) However, the Sixth Circuit has held that a plaintiff must prove but-for causation only when the harassment is "nonsexual" in nature. Simpson v. Vanderbilt Univ., 359 F. App'x 562, 572 (6th Cir. 2009) (citing Bowman v. Shawnee State Univ., 220 F.3d 456, 463

harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for ascribing liability to the employer. Grace v. USCAR, 521 F.3d 655, 678 (6th Cir. 2008) (citation omitted). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (internal citation and quotation marks omitted). An employee may prove that he was "exposed to disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed" if he (1) establishes that the harasser who made sexual advances was acting out of sexual desire; (2) demonstrates that the harasser was motivated by general hostility to the presence of men in the workplace; or (3) offers direct comparative evidence about how the harasser treated members of both sexes in a mixed-sex workplace. Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 765 (6th Cir. 2006) (citing Oncale, 523 U.S. at 80-81) (quotation marks omitted); King v. Super Serv., Inc., 68 F. App'x 659, 663 (6th Cir. 2003). Title VII, thus, is concerned with "[c]onduct that is . . . severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive . . . ." Oncale, 523 U.S. at 81 (citations and internal quotation marks omitted).

In this case, the Court agrees with the Defendant that the Plaintiff can prove no set of facts that would allow him to prevail on his hostile work environment claim. Although its filings do not specify the precise failures of Bradley's prima facie case, Bates appears to be asserting that the conduct of which he complains was not based on sex and/or did not create an objectively

---

(6th Cir. 2000)). In this case, the allegedly offensive conduct clearly was sexual in nature, which the parties do not dispute, and thus, the Plaintiff's burden is not as onerous as Bates contends.

intimidating, hostile, or offensive work environment. <u>Grace</u>, 521 F.3d at 678. Defendant's argument on these points is essentially twofold: (1) because the factory was a mixed-sex work environment, both men and women were in a position to witness the offensive conduct; and (2) Bradley has been unable to connect his claim to any of the three scenarios that the Supreme Court articulated in <u>Oncale</u>.

Although the offensive behavior in which Cude *et al*. engaged was male-on-male, the Plaintiff does not deny that all of the employees in the factory—including the women who worked there—were exposed to this conduct.[5] (D.E. 15-1, Bradley's Response to Bates's Statement of Undisputed Facts, ¶¶ 11-12, 22.) All of the instances he references in his filings seem to have taken place in full view of several people (although exactly how many is indeterminate) because as Plaintiff concedes, Cude *et al*. were "putting on a show" "to entertain anyone around." (<u>Id</u>. at ¶¶ 11-12, 15, 22-24.) Bradley admits that none of the other employees touched him or made any specific comments to/about him, nor did he ever see another employee's genitals.[6] (<u>Id</u>. at ¶¶ 13, 20.) Moreover, Plaintiff himself is only able to point to two occasions when he felt that some of the vulgar behavior was directed towards him. (<u>Id</u>. at ¶¶ 23-24.) Without more, Plaintiff's subjective perception that he was "singled out," or that the

---

[5] Plaintiff notes that two female employees, Debbie Daniels and Donna King, specifically denied witnessing any inappropriate sexual acts. (D.E. 16, Bradley's Response to MSJ, pp. 6-7.) He also avers that "[n]one of the women interviewed in Defendant's investigation . . . acknowledged that there was sexual conduct in the workplace." (<u>Id</u>. at p. 6.) However, he does not deny that the following women were in a position to witness the behavior of Cude *et al*., none of whom were interviewed by Bates during its investigation: Christy Hensley, Rose Hensley, Donna Guthrie, Stacy Ramsey, Gina Barber, Doug Barber's sister-in-law, and Doug Barber's wife. (D.E. 15-1, Bradley's Response to Bates's Statement of Undisputed Facts, ¶¶ 11-12; D.E. 16-4 and 16-10, Interview Notes.)  Thus, at the very least, there is the possibility that all of these women were exposed to the vulgar conduct, which Plaintiff has not disproved.

[6] Bradley makes a few oblique references to bathroom graffiti that contained his name, which he claims caused him to feel that some of the factory employees were singling him out or discriminating against him because of his discomfort with the sexual activity that was occurring. (D.E. 16-1, Bradley's Response to MSJ, p. 7.) However, he has made no attempt to identify who may have written the graffiti, or why, or even what it said—he admits that "he refused to read the graffiti." (<u>Id</u>.) In light of these facts, it is difficult to conceive how Plaintiff could have formed an opinion about the allegedly discriminatory nature of the graffiti, given that he does not even know who wrote it or what it said.

behavior was "directed at him" is supported by nothing more than conclusory allegations. "Conclusory assertions, supported only by [Plaintiff's] own opinions, cannot withstand a motion for summary judgment." Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (citations omitted).

Most importantly, Bradley is unable to establish that men were the only witnesses to the crude behavior, since several women were in a position to observe it as well. Therefore, Plaintiff cannot establish that the behavior of which he complains was "based on sex," and thus, he has not set forth a prima facie case for a hostile work environment claim. Grace, 521 F.3d at 678. If the facts are as he alleges, there is no doubt that the behavior of Cude *et al.* was repulsive and offensive, and was the sort of conduct that never should be tolerated in the workplace. Title VII, however, is not a "general civility code," but rather is focused on behavior that is "so objectively offensive as to alter the conditions of the victim's employment." Oncale, 523 U.S. at 80-81 (internal quotation marks omitted); *see also* E.E.O.C. v. Harbert-Yeargin, Inc., 266 F.3d 498, 519-20 (6th Cir. 2001) (Guy, J., concurring in part and dissenting in part, and delivering the opinion of the court on the hostile work environment claim) (noting that vulgar conduct, without more, is not actionable under Title VII, and holding, "Although certain types of harassment may result in actionable discrimination, Title VII is not a generic anti-harassment statute. This distinction becomes important in hostile work environment cases"). Thus, although the behavior of Cude *et al.* was nothing if not vulgar and inappropriate, it does not rise to the level of actionable discrimination that federal law requires.

Furthermore, the Court finds that Bradley cannot establish that any of the three Oncale scenarios is analogous to his situation. He has presented no evidence that would indicate that Cude or anyone else displayed a "general hostility to the presence of [men] in the workplace,"

because the alleged harassers all are men themselves, and as Plaintiff acknowledges, they were putting on a show to entertain others. Oncale, 523 U.S. at 80. He has made no attempt to differentiate between the way Cude *et al.* treated women and men in the workplace—indeed, it is this dearth of comparative evidence that is also fatal to his prima facie case because he cannot demonstrate that women experienced or reacted to the crude conduct any differently than men did. Id. at 80-81.

Finally, based on the evidence that Plaintiff has presented, there simply are not enough credible facts from which a jury could infer that Cude *et al.* acted out of a homosexual desire. Id. Although the same-sex acts in which they engaged were sexual in nature, they never actually exposed themselves to one another, nor did they ever touch Bradley. Moreover, neither the Plaintiff nor anyone else he has discussed self-identifies as homosexual—several of them are, in fact, married. (D.E 15-1, Bradley's Response to Bates's Statement of Undisputed Facts, ¶¶ 2-3, 7); Oncale, 523 U.S. at 80 (noting that an inference of discrimination "would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual"). While it is true, as Plaintiff asserts, that a person can be a homosexual despite being in a heterosexual marriage, there is nothing apart from the vulgar work conduct to suggest that any of the employees involved therein are homosexuals, especially because Plaintiff concedes that they were just "putting on a show" that was intended to entertain. Thus, the primary purpose of and motivation for the behavior in which Cude *et al.* engaged appears not to have been sexual desire or gratification, but rather an attempt to amuse and show off for their coworkers—misguided though this agenda may have been. Therefore, the Court finds that Bradley has not established that the situations the Supreme Court described in Oncale are apposite in this case. Bates, therefore, is entitled to judgment as a matter of law on Bradley's

hostile work environment claim.

## CONCLUSION

For the reasons articulated herein, Bates's motion for partial summary judgment on Bradley's hostile work environment claim is **GRANTED**.

**IT IS SO ORDERED** this, the 13th day of August, 2010.

s/J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE
